# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| CHRISTOPHER TRAMMELL, | |
| *Plaintiff,* | |
| v. | **CIVIL ACTION NO.** **5:19-cv-00204-TES** |
| GEORGIA DEPARTMENT OF CORRECTIONS, *et al.,* | |
| *Defendants.* | |

## ORDER GRANTING MOTIONS TO DISMISS

Nine plaintiffs filed virtually identical complaints following an incident involving the June 13, 2017, murder of two Georgia Department of Corrections officers, Sgt. Christopher Monica and Sgt. Curtis Billue. [Doc. 5 at ¶¶ 3, 6, 47]. Plaintiff Christopher Trammel, at the time he filed his lawsuit, was not in the custody of the Georgia Department of Corrections. Now, it appears, he is back in prison.[1] *See* Georgia

---

[1] Previously, in reviewing Plaintiff's documents regarding his request to proceed *in forma pauperis* ("IFP"), the Court could not determine whether he was incarcerated or released and capable of earning and receiving an income. [Doc. 4 at p. 3]; *see also* [Doc. 7 at pp. 1–2]. However, in a resubmitted IFP request he states that he "was previously in custody for 18 months." [Doc. 6 at p. 3]. Now, apparently, he is back in custody because the "Find an Offender" query on the Georgia Department of Corrections' website states that he is "currently serving." Georgia Department of Corrections, http://www.dcor.state.ga.us/GDC/Offender/Query, (last visited Oct. 10, 2019). Regardless of whether Plaintiff was actually released or in custody at the time he filed his Complaint, [Doc. 1], the Court denied his request to proceed IFP, and Plaintiff paid the $400.00 filing fee on June 24, 2019.

Department of Corrections, http://www.dcor.state.ga.us/GDC/Offender/Query, (last visited Oct. 10, 2019). This case is the fifth of those nine cases, and it is now before the Court on Defendants' Motions to Dismiss [Docs. 19, 20]. The Georgia Department of Corrections ("GDC")[2] filed the first dismissal motion, and the individual GDC employees Plaintiff named in his Amended Complaint, [Doc. 5], filed the second. As explained below, the Court **GRANTS** both Motions.

## FACTUAL BACKGROUND

The facts of this case are simple. Plaintiff was one of many GDC inmates allegedly injured on a prison transport bus when Sgt. Monica and Sgt. Billue were overpowered and shot with their own weapons by inmates Donnie Rowe and Ricky Dubose. [Doc. 5 at ¶¶ 2, 6–7]. Rowe and Dubose subsequently fled the scene and escaped before being apprehended in Tennessee. [*Id.* at ¶¶ 7, 34, 47, 49]. Plaintiff states that he sustained physical injuries to his head and back when his body struck the prison bus structure during the shootings and his removal from the prison bus through its rear

---

In light of the Court's previous determination (based completely on Plaintiff's statements that he was in fact not in custody), the exhaustion requirements under the Prison Litigation reform Act, 42, U.S.C. § 1997e(a) ("PLRA"), will not apply. The PLRA "only applies when [a] plaintiff is confined in a correctional facility when the lawsuit is commenced"; therefore, Plaintiff's Amended Complaint, [Doc. 5], is not subject to administrative exhaustion. *Q.F. v. Daniel*, 768 F. App'x 935, 938 (11th Cir. 2019) (citing *Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000) ("It is confinement status at the time the lawsuit is 'brought,' i.e., filed, that matters.")).

[2] Baldwin State Prison, Hancock State Prison, and the Georgia Diagnostic and Classification Prison are not separate legal entities but are units of the Georgia Department of Corrections, and the Court, consistent with the parties' language, refers to these Defendants collectively as "GDC." [Doc. 19-1 at p. 1]; *see, e.g.,* [Doc. 25 at p. 5 ("The GDC has filed a Motion to Dismiss . . . .")].

emergency window. [*Id.* at ¶ 6]. As a result of witnessing the shootings and his subsequent 70-day placement in administrative segregation while the shootings were being investigated, Plaintiff alleges that he "suffered Post Traumatic Stress Syndrome and other psychiatric maladies yet to be identified." [*Id.* at ¶¶ 4, 6–7].

Generally speaking, Plaintiff casts his factual allegations as violations of the Eighth Amendment of the United States Constitution, Georgia law, and GDC rules and regulations. [Doc. 5 at ¶ 45]. However, after a broad reading of Plaintiff's Amended Complaint, Defendants refined Plaintiff's claims as state-law tort claims and claims under 42 U.S.C. § 1983, and Plaintiff never contends otherwise. [Doc. 19-1 at p. 2]; [Doc. 20-1 at p. 2]. Based on his purported injuries, Plaintiff seeks at least $250,000 in damages for negligence, deliberate indifference, and Defendants' alleged failure to follow GDC rules and regulations. [Doc. 5 at ¶ 45]; *see also* [*id.* at p. 30].

## DISCUSSION

### A.    Standard of Review

Defendants seek dismissal of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). With regard to Rule 12(b)(1) jurisdictional motions, attacks on subject-matter jurisdiction come in two forms, "facial" and "factual" attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks challenge subject-matter jurisdiction based on the allegations in a complaint. *Id.* at 1529. District courts take those allegations as true in deciding whether to grant motions based on a

lack of subject-matter jurisdiction. *Id.* Factual attacks challenge subject-matter jurisdiction in fact, irrespective of the pleadings. *Id.* In resolving a factual attack, courts may consider extrinsic evidence such as testimony and affidavits. *Id.* Defendants' Motions under Rule 12(b)(1) are based upon a lack of subject-matter jurisdiction, and Defendants argue that they are entitled to immunity under the Eleventh Amendment and Georgia law.

When deciding a 12(b)(6)-based motion, district courts must accept the facts set forth in a complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations

are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

Ultimately, the issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). A complaint tendering "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss; it must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 557) (alteration in original); *see also Twombly*, 550 U.S. at 556.

Finally, "if [a] complaint contains a claim that is facially subject to an affirmative

defense, that claim may be dismissed under Rule 12(b)(6). *LeFrere v. Quezada*, 582 F.3d

1260, 1263 (11th Cir. 2009). In applying the foregoing standard, and taking the facts

asserted in Plaintiff's Amended Complaint as true, the Court rules on Defendants'

Motions to Dismiss.

**B.**     **GDC's Motion to Dismiss**

As previously stated, Defendant GDC sets forth two main bases for dismissal: (1)

that it is immune from suit in this Court under both the United States and Georgia

Constitutions, and (2) that Plaintiff's state-law claims are further barred by the Georgia

Tort Claims Act ("GTCA"). [Doc. 19-1 at pp. 4–13]. Given that GDC is undeniably

immune from suit on Plaintiff's claims, the Court need not discuss GDC's procedural-

related arguments under the GTCA.

Rather than address GDC's specific arguments related to its immunity, Plaintiff

argued that he should be permitted to take 90–150 days for discovery, the results of

which, he asserts, would enable him "to substantiate his claims," to determine "the real

party of interest," and "to properly present his position [in] response to [Defendants']

Motion to Dismiss." [Doc. 25 at pp. 3–4]. Plaintiff's argument that GDC "has offered no

evidence as to the real party of interest," appears to reference the Eleventh

Amendment's bar to suits where the state is "the real party in interest or when any

monetary recovery would be paid from state funds." [Doc. 27 at p. 2 (quoting *Kentucky v. Graham*, 473 U.S. 159, 169 (1985))]; [Doc. 25 at p. 4]. Interpreted broadly, Plaintiff's argument is perhaps an assertion that discovery would determine whether the State of Georgia is the real party in interest regarding suits against GDC.

However, as GDC correctly states, that question is "well-settled in this circuit." [Doc. 27 at p. 2]. In *Stevens v. Gay*, the Eleventh Circuit Court of Appeals unequivocally determined that Section 1983 claims cannot proceed against GDC. 864 F.2d 113, 115 (11th Cir. 1989) (finding in a Section 1983 lawsuit that "[t]he Eleventh Amendment bars this action against the Georgia Department of Corrections"). Accordingly, Plaintiff's Section 1983 claims against GDC are barred.

Plaintiff's state-law claims against GDC are also barred by state sovereign immunity. The State of Georgia has waived sovereign immunity for certain claims against it but not for assault and battery. O.C.G.A § 50-21-24(7) ("The state shall have no liability for losses resulting from assault [or] battery . . . ."). Thus, to the extent Plaintiff asserts assault and battery claims, they are barred by state sovereign immunity. Furthermore, even if Plaintiff attempted to assert a negligence claim arising from injuries he received as a result of some assault or battery, state sovereign immunity also bars such a claim. The Georgia courts have explained that where "a plaintiff's injury was caused by an assault and battery committed by a third party, the state is immune from suit even if the assault and battery was facilitated by or resulted from the prior

negligent performance of a state officer or employee." *Pelham v. Bd. of Regents of Univ. Sys. of Ga.*, 743 S.E.2d 469, 473 (Ga. Ct. App. 2013) (citing *Youngblood v. Gwinnett Rockdale Newton Comm. Serv. Bd.*, 545 S.E.2d 875, 878 (Ga. 2001)). Therefore, neither Plaintiff's federal nor state-law claims against GDC can proceed and GDC's Motion to Dismiss [Doc. 19] is **GRANTED**.

### C. Individual Defendants' Motion to Dismiss

In their Motion, Defendants Gregory C. Dozier, Ricky Myrick, Clay Nix, Timothy C. Ward, Jack Randall Sauls, Trevonza Bobbitt, Eric Sellers, Annettia Toby, and Jay Sanders (collectively, the "Individual Defendants") argue that Plaintiff's Section 1983 claims against them in their official capacities, or "representative capacities" as Plaintiff states, are due to be dismissed pursuant to the Eleventh Amendment, and the Section 1983 claims asserted against them in their individual capacities are due to be dismissed under the protections of qualified immunity and for failure to state a claim. *See, e.g.*, [Doc. 5 at p. 8]; *see also* [Doc. 20-1 at pp. 4–18]. With respect to the state-law claims Plaintiff asserts against the Individual Defendants, those claims are likewise subject to dismissal under Georgia law.

### 1. Plaintiff's Section 1983 Claims

When a court considers a claim asserted via Section 1983, it must first identify the specific constitutional right allegedly infringed, and then determine the validity of the claim "by reference to the specific constitutional standard . . . govern[ing] that right."

*Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 394 (1989). As with most litigation involving prisons, the Section 1983 claims in this case fall under the Eighth Amendment's standard for deliberate indifference and the Fourteenth Amendment's standards governing due process.

However, an order that embarks on the substance of Plaintiff's deliberate indifference claim in this case would be rendered useless in light of the immunities available to the Individual Defendants. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Controlling interpretations of the Eleventh Amendment firmly "establish that an unconsenting [s]tate is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citation omitted). Eleventh Amendment immunity equally applies to a state's agencies and departments. *Id.* Further, Eleventh Amendment immunity "remains in effect when [s]tate officials are sued for damages in their official capacity." *Graham*, 473 U.S. at 169. The Eleventh Amendment bars Section 1983 suits absent state waiver of immunity or congressional override. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Accordingly, because the State of Georgia does "not waive any immunity with respect to actions brought in the courts of the United States," O.C.G.A. § 50-21-23(b), the

Court finds that Eleventh Amendment immunity is applicable in this case, and Plaintiff's Section 1983 claims against the Individual Defendants in their official capacities must be dismissed.

As for the claims asserted against the Individual Defendants in their individual capacities, they argue that they are entitled to qualified immunity. "Qualified immunity shields government officials acting within their discretionary authority from liability unless the officials 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In deciding whether to grant qualified immunity on a motion to dismiss, the Court must accept "the factual allegations in the complaint as true and draw[ ] all reasonable inferences in [a] plaintiff's favor." *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009) (quoting *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)).

The test for qualified immunity is two pronged. First, "[a] defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly unconstitutional action." *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018). Then, if a defendant makes this showing, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged

misconduct." *Id.* Here, Plaintiff's Amended Complaint alleges that the Individual Defendants were acting within the scope of their duties and authority as GDC officials or employees at all relevant times. [Doc. 5 at ¶¶ 16–24]. Thus, the first prong has been met, and it is incumbent on Plaintiff to show that qualified immunity is inappropriate, because the Individual Defendants violated clearly-established law.

In short, Plaintiff does not and cannot make this showing. "A right is clearly established if 'at the time of the incident, the preexisting law dictates, that is, truly compel[s], the conclusion for all reasonable, similarly situated public officials that what [the officer] was doing violated [a plaintiff's] federal rights in the circumstances.'" *Woodyard v. Ala. Dep't of Corrs.*, 700 F. App'x 927, 931 (11th Cir. 2017) (per curiam) (alterations in original) (quoting *Marsh v. Butler Cty.*, 268 F.3d 1014, 1030–31 (11th Cir. 2001) (en banc), *abrogated on other grounds by Twombly*, 550 U.S. at 561–63). To determine "whether a particular constitutional violation is clearly established, [the Court] look[s] to [Eleventh Circuit] binding precedent, the binding precedent of the Supreme Court, and the binding precedent of the 'highest court in the state where the action is filed.'" *Id.* at 932 (quoting *Merricks v. Adkisson*, 785 F.3d 553, 560 (11th Cir. 2015)).

To begin, Plaintiff's Amended Complaint stresses, over and over, that all of the Individual Defendants' positions and responsibilities within GDC carry supervisory characteristics. [Doc. 5 at ¶¶ 16–24]. Plaintiff alleges that the Individual Defendants, as supervisors, violated the Constitution because they failed to protect him, despite

knowing of "an unstated 'history of assault and violence'" and various violations of GDC policy by Sgts. Monica and Billue. [Doc. 19-1 at p. 2 (citing [Doc. 5 at ¶¶ 8, 40–45, 49])]. In the context of a failure to protect claim, "[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates" the Constitution. *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (quoting *Marsh*, 268 F.3d at 1028). To show that an official was deliberately indifferent to such a risk, a plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Franklin*, 738 F.3d at 1250 (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013)).

However, "[i]t is well established in this Circuit that supervisory officials are not liable under [Section] 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). Therefore, a plaintiff seeking to hold a supervisor liable for constitutional violations must show either that "the supervisor personally participate[d] in the alleged unconstitutional conduct or [that] there is a causal connection between the actions of [the] supervising official and the alleged constitutional deprivation." *Id.* Here, as the Individual Defendants point out—of the few, specific allegations of first-hand knowledge stated in Plaintiff's Amended Complaint, such allegations are attributed to unknown "personnel," not any specific Individual Defendant. [Doc. 5 at ¶ 29]. It seems

that Plaintiff is alleging the existence of some sort of "chain of command" in which some unknown GDC "personnel" (who had supposedly been notified by Sgt. Billue of Sgt. Monica's policy violations) immediately reports the violation to the Individual Defendants who in turn "failed to correct" it. [*Id.*].

Plaintiff's Amended Complaint, as it is written, never alleges that *any* of the Individual Defendants were present at the time of the shootings. As far as we know, only Sgts. Monica and Billue were there, because he never even names the actual GDC personnel or officers who supposedly pulled him from the rear emergency window of the prison bus. [*Id.* at ¶ 6]. Instead, Plaintiff only names those individuals with supervisory responsibilities, thus he cannot show that any Individual Defendant personally participated in any alleged unconstitutional conduct. Therefore, in order to bring claims against them, he must show a causal connection between their actions and the deprivation of his constitutional rights. This causal connection can be shown one of three ways: (1) by showing that "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; (2) by showing that "a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights"; or (3) by pointing to "facts [that] support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234–35 (11th Cir. 2003)). "The

standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* at 1361 (quoting *Gonzalez*, 325 F.3d at 1234). The allegations in Plaintiff's Amended Complaint do not show a clearly established causal connection under any of the three theories.

First, Plaintiff's allegations do not support a finding that a history of widespread abuse put the Individual Defendants on notice of the need to correct the alleged deprivation. "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Keith*, 749 F.3d at 1048 (quoting *Hartley*, 193 F.3d at 1269). As previously stated, Plaintiff's Amended Complaint does not allege or show that any Individual Defendant was personally involved with the unfortunate incident in this case. Moreover, and most notably, Plaintiff's Amended Complaint is completely void of a previous allegation regarding an incident like this one. Plaintiff's allegations, at most, detail only GDC policy violations (or negligence), *see, e.g.*, [Doc. 5 at ¶ 16, 27, 43], and it is well-established that negligence and mere policy violations, standing alone, are insufficient to impose liability under Section 1983. *See Cagle v. Sutherland*, 334 F.3d 980, 986–87 (11th Cir. 2003) (a violation of a policy does not establish deliberate indifference); *Goodman*, 718 F.3d at 1332 ("Merely negligent failure to protect an inmate from attack does not justify liability under [Section] 1983."). As to the first theory of showing a causal connection, Plaintiff's Amended Complaint makes no allegations that

the Individual Defendants had been placed on notice of prior incidents or other security breaches during inmate transports in connection with Sgt. Monica's GDC policy violations. Without even the barest allegation of similar instances, Plaintiff certainly cannot establish widespread incidents of the type required by law to impart supervisory liability on the Individual Defendants.

Similarly, Plaintiff's Amended Complaint does not point to a policy or custom that the Individual Defendants allowed resulting in deliberate indifference. Although, as the Individual Defendants candidly point out, Plaintiff's Amended Complaint does allege that the Individual Defendants "knew that the rules and regulations of the GDC were, in part, to confine and protect prisoners and that violations of such rules and regulations threaten prisoners and guards and put them in danger," such allegation is essentially a factually-unsupported legal conclusion and is insufficient under the standard discussed above. *See Iqbal*, 556 U.S. at 678, *supra*; *see, e.g.*, [Doc. 5 at ¶ 17]. In order for supervisor liability to attach based on a policy or custom, it must be alleged, and ultimately proved, that it was the *supervisor's* own policy or custom that caused the alleged constitutional deprivation. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) ("An official may also be liable where a policy or custom that he established or utilized results in deliberate indifference to an inmate's constitutional rights."). To the extent Plaintiff contends that the Individual Defendants simply tolerated or allowed certain customs to continue, such contention is no more than an allegation of negligence

simply suggesting that they failed to react to Sgt. Monica's own alleged policy or custom, rather than to the imposition of some policy or custom they created themselves. And, as previously discussed, negligence is not a basis for liability under Section 1983. *Goodman*, 718 F.3d at 1332. Without such personal involvement, the Individual Defendants may not be held liable. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987) ("A [Section] 1983 claim cannot be based on vicarious liability.").

Aside from any pattern of widespread abuse or any custom or policy, Plaintiff makes no allegation that any Individual Defendant was subjectively aware that this incident was likely to occur and, in spite of that awareness, failed to prevent its occurrence. "[T]o be deliberately indifferent[,] a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Franklin*, 738 F.3d at 1250 (emphasis in original) (quoting *Goodman*, 718 F.3d at 1332). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1321 (11th Cir. 2016) (quoting *Farmer v. Brennan*, 511

U.S. 825, 842 (1994)). "The trier of fact may, therefore, 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer*, 511 U.S. at 842). "Nevertheless, it is only a heightened degree of culpability that will satisfy the subjective knowledge component of the deliberate indifference standard, a requirement that 'is far more onerous than normal tort-based standards of conduct sounding in negligence.'" *Id.* (quoting *Goodman*, 718 F.3d at 1332).

Typically, courts find that an official had the requisite knowledge of a risk of harm when the official knows about things like rumors or complaints that an assailant previously assaulted someone or had some other tendency to commit harm. *See, e.g., Bowen*, 826 F.3d at 1321–22 (finding officers were deliberately indifferent to the risk of inmate-on-inmate assault where they were aware that the assaulting inmate "had committed a 'High-Assault' against his previous cellmate," "was a severe paranoid schizophrenic who suffered from violent delusions, auditory hallucinations, and impulsive tendencies," had been convicted of murder, and was being housed in a cell with another inmate contrary to prison guidelines).

In *Franklin*, the Eleventh Circuit Court of Appeals held that imputing knowledge based on a supervisor's position does not show deliberate indifference. 738 F.3d at 1246. Where a plaintiff puts forth only "the names and titles of . . . [s]upervisory [d]efendants, but alleges nothing about the significance of their titles . . . or any other characteristics that would bear on whether they knew about but were deliberately indifferent to [an

inmate's] conduct and the risk he posed," a showing of deliberate indifference is unlikely. *Id.* at 1251–52. While Plaintiff's Amended Complaint claims that each Individual Defendant held a supervisory role at GDC and provides general descriptions of their responsibilities, it does not set forth any personal interaction between or familiarity with those directly involved in this incident. [Doc. 5 at ¶¶ 16–24, 31, 33, 40].

Based not only on the fact that this was a single, isolated event (with no allegation that anything like it had occurred in the past), but also on the fact that Plaintiff's Amended Complaint provides no factual details or allegations concerning a personal familiarity by any Individual Defendant regarding any rumor of inmate Rowe and Dubose's plans, there can be no plausible inference that they were subjectively aware of a substantial risk of serious harm to Plaintiff, that they disregarded that risk, and caused the harm Plaintiff alleges.

After a careful review of Plaintiff's Amended Complaint and the applicable law, the Court finds that he has failed to allege sufficient facts to demonstrate that the Individual Defendants violated clearly established law with regard to a claim of deliberate indifference. Accordingly, the Individual Defendants are entitled to the protections afforded by qualified immunity as to Plaintiff's Eighth Amendment deliberate indifference (failure to protect) claim asserted against them in their individual capacities.

Likewise, Plaintiff's Eighth Amendment conditions of confinement claim is also without merit, because his Amended Complaint fails to allege that his conditions during his placement in administrative segregation for 70 days violated the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Further, to the extent Plaintiff takes issue with the procedure used in placing him in administrative segregation and asserts due process violations, they are due to be dismissed as well.

The Supreme Court's interpretation of the Fourteenth Amendment's Due Process Clause "explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc). It is true that states may—under certain circumstances—create liberty interests deserving of protection by the Due Process Clause, but in order to state a cognizable claim for deprivation of procedural due process rights under the Fourteenth Amendment, an inmate must allege, *inter alia*, a "constitutionally inadequate process." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995); *see also Shaarbay v. Palm Beach Cty. Jail*, 350 F. App'x 359, 361 (11th Cir. 2009) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir, 1994)).

A procedural due-process claim requires three elements: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir.

2003). As the Individual Defendants argue, Plaintiff's allegations do not establish any of the three elements. [Doc. 20-1 at pp. 14–16]. Most importantly, there are no allegations of state action alleging personal participation by any Individual Defendant. The only reasonable inference to that effect could be Plaintiff's allegation that the prison warden, Defendant Eric Sellers, is somehow liable for his "fail[ure] to intervene" and remove Plaintiff from administrative segregation. [Doc. 5 at ¶ 23]. However, because there are no allegations or claims in Plaintiff's Amended Complaint that he was denied notice or an opportunity to be heard, he fails to state a procedural due-process claim.[3]

Clearly, the Individual Defendants placed Plaintiff in administrative segregation during the pendency of the investigation related to the shootings on June 13, 2017, thus any due process claim—to the extent one is even alleged—fails because Plaintiff did not even attempt to make factual allegations that GDC failed to give him any opportunity to present his views—he merely states that he was "held in [administrative segregation] to an extreme and prolonged time (70 days) with no justification of same." [Doc. 5 at ¶ 4].

Regardless, prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." *Kramer v. Donald*, 286

---

[3] In *Hewitt v. Helms*, the Supreme Court described, albeit in dicta, what process is due from prison officials making administrative-segregation determinations when a liberty interest is at stake. 459 U.S. 460 (1983). When the initial confinement decision is contemplated or made, whether for institutional safety reasons or to separate the prisoner pending an investigation, the prisoner must "receive some notice of the charges against him and an opportunity to present his views," whether at a hearing or in writing. *Id.* at 476.

F. App'x 674, 676 (11th Cir. 2008) (per curiam). However, a prisoner has a protected liberty interest that is violated by placement in punitive segregation when the placement "will inevitably affect the duration of his sentence" or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995). Because there is no evidence to suggest the latter, *Chapman*, 452 U.S. at 347, *supra*, and given that Plaintiff is no longer in custody, with regard to the former, he fails to state a viable due process claim with respect to GDC's investigation of the shootings.

2.        Plaintiff's State-Law Claims

Absent an express waiver, the Eleventh Amendment "bars suits brought in federal court when the State itself is sued [or] when an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc). "Likewise, the Eleventh Amendment bars federal suits against state officials in their 'official capacity' because such actions seek recovery from state funds." *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir. 1993). As the Court previously found, the Individual Defendants are "arms of the state" with regard to their duties as GDC officers, and are therefore, state officials. Accordingly, the Eleventh Amendment bars Plaintiff's state-law claims against the Individual Defendants in their official capacities unless Georgia expressly waived its immunity. In Georgia, sovereign immunity "can be waived only by a legislative act

specifically delineating the waiver." *Polite v. Doughtery Cty. Sch. Sys.*, 314 F. App'x 180, 184 (11th Cir. 2008) (per curiam) (citing Ga. Const. Art. 1, § 2 ¶ IX(e)).

The Georgia Tort Claims Act ("GTCA") provides a limited waiver of the state's sovereign immunity for actions alleging torts committed by state officers or employees; however, it does not waive the state's sovereign immunity for tort actions brought against the state in federal court. O.C.G.A. § 50-21-23(b) (noting the state's waiver extends "only with respect to actions brought in the courts of the State of Georgia" and explaining "[t]he state does not waive any immunity with respect to actions brought in the courts of the United States"). Therefore, the Individual Defendants are immune in their individual capacities from suit in federal court as to Plaintiff's state-law claims.

As to the state-law claims asserted against the Individual Defendants in their individual capacities, the Eleventh Amendment does not provide a shred of protection. "[T]he Eleventh Amendment does not protect state employees sued in their individual capacity for employment-related acts." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). However, the Individual Defendants maintain that the GTCA, nonetheless, provides them with immunity on Plaintiff's state-law claims against them in their individual capacities. [Doc. 19-1 at pp. 4–5]. They are correct.

Pursuant to the GTCA, "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). This immunity applies even when

the officer is accused of committing unauthorized torts that are intentional or malicious. *See Ridley v. Johns*, 552 S.E.2d 853, 854 (Ga. 2001) ("Since there is no exemption [in O.C.G.A. § 51-21-25(a)] for acts motivated by malice or an intent to injure, the presence of such a motivation has no effect on the immunity granted by the statute."). Georgia law further provides that tort claimants must "name as a party defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually." O.C.G.A. § 50-21-25(b). In other words, if a state officer or employee is sued for a tort committed while acting within the scope of his or her official duties or employment, "the state government entity for which the state officer or employee was acting must be substituted as the party defendant." *Id.*; *see also Riddle v. Ashe*, 495 S.E.2d 287 (Ga. 1998) (quoting O.C.G.A. § 50-21-25(a) ("[N]othing in [the GTCA] shall be construed to give a state officer or employee immunity from suit and liability if it is proved that the officer's or employee's conduct was not within the scope of his or her official duties or employment.")).

Here, Plaintiff's response to the Individual Defendant's GTCA-related arguments is wholly absent of any contention that any Individual Defendant's actions somehow occurred outside the scope of their employment. Instead, Plaintiff, once again, just argues that "he has the right to investigate identities of individuals," presumably via his requested discovery period, but fails to cite to any supporting authority for this proposition. [Doc. 26 at p. 8]. Because the Individual Defendants were state officers or

employees under O.C.G.A. § 50-21-22(7),[4] acting within the scope of their duties or employment, they are immune from suits seeking tort recovery under any state law pursuant to the GTCA. Additionally, given that GDC, the state government entity for which the Individual Defendants were acting, would be substituted as the party defendant pursuant to O.C.G.A. § 50-21-25(b), Plaintiff's state-law claims are also barred in light of the Court's ruling above with respect to GDC itself. *See* Section B, *supra*.

Consequently, the Court must dismiss Plaintiff's federal and state-law claims against the Individual Defendants, and their Motion to Dismiss [Doc. 20] is **GRANTED**.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss [Docs. 19, 20]. This case is **DISMISSED without prejudice**.

**SO ORDERED**, this 10th day of October 2019.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[4] In relevant part, O.C.G.A. § 50-21-22(7) provides,

"State officer or employee" means an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include an independent contractor doing business with the state. The term state officer or employee also includes any natural person who is a member of a board, commission, committee, task force, or similar body established to perform specific tasks or advisory functions, with or without compensation, for the state or a state government entity, and any natural person who is a volunteer participating as a volunteer, with or without compensation, in a structured volunteer program organized, controlled, and directed by a state government entity for the purposes of carrying out the functions of the state entity.